JOHN M. FRIEND

NOV 22 201_

IN THE DISTRICT COURT OF DOUGLAS COUNTY, NEBRASKA

| ROBERT HILL, | CASE NO: CI13-9647 |
|---|---|
| Plaintiff, | |
| v. | COMPLAINT |
| RASMUSSEN MECHANICAL SERVICES, INC. d/b/a C.G. JOHNSON BOILER COMPANY, BRUCE E. RASMUSSEN, and THE BOARD OF TRUSTEES OF THE BOILERMAKERS NATIONAL ANNUITY TRUST, | ASSIGNED TO Dean |
| Defendants. | |

**COMES NOW** the Plaintiff, Robert Hill, by and through his attorneys, and for his Complaint against the Defendants alleges:

1. Plaintiff is and was, at all times mentioned herein, a resident of Omaha, Douglas County, Nebraska.

2. Defendant Rasmussen Mechanical Services, Inc. d/b/a C.G. Johnson Boiler Company (hereinafter, "Rasmussen") is a corporation organized under the laws of the state of Iowa.

3. Rasmussen is authorized to do business in the state of Nebraska and, in fact, does business in the state of Nebraska.

4. "C.G. Johnson Boiler Company" is a trade name registered with the Nebraska Secretary of State.

5. Defendant Bruce E. Rasmussen (hereinafter, "Bruce"), an individual person, has been president of Rasmussen from 1986 to the present.

6. Plaintiff worked for Rasmussen from approximately 1986 to August 11, 2008.

7. From 1986 to approximately 2003, the physical location of Rasmussen's office to which Plaintiff reported was located in Omaha, Douglas County, Nebraska. From approximately



2003 to August 2008, the physical location of Rasmussen's office to which Plaintiff reported was located in Council Bluffs, Pottawattamie County, Iowa.

8. Defendant The Board of Trustees of the Boilermakers National Annuity Trust (hereinafter, the "Board") has exclusive management and control of the Boilermakers National Annuity Trust (hereinafter, the "Trust").

9. The Trust was created by agreement among 1) the International Brotherhood of Boilermakers, Iron Ship-builders, Blacksmiths, Forgers and Helpers (hereinafter, the "Union"), 2) certain employers subject to collective bargaining agreements with the Union, and 3) the Board.

10. The Union is comprised of, among other things, local lodges representing individual Union member employees throughout the United States, including Boilermakers Local 83, which represents Union member employees in Nebraska.

11. The corpus of the Trust (hereinafter, the "Fund") is comprised of contributions of property from employers who make such contributions to provide annuity retirement benefits for their employees.

12. The Fund is held in trust by the Board for the benefit of individual employees, including employees located in Nebraska.

13. The Board has legal title to the Fund and makes distributions of annuity benefits from the Fund to individual employees, including employees located in Nebraska.

14. Rasmussen is a signatory to the Trust.

15. While employed by Rasmussen, Plaintiff was a member of the Union, Local 83.

16. From approximately 1990 to August 2008, Rasmussen made regular payments to the Trust on behalf of Plaintiff for the purpose of creating a retirement annuity fund for Plaintiff from which Plaintiff would receive payments upon his retirement.

17. While employed by Rasmussen, the Board sent periodic account statements to Plaintiff at his home in Omaha, Douglas County, Nebraska confirming that Rasmussen was making regular payments to the Trust on his behalf and that the Board was maintaining a retirement annuity fund, comprised of payments received from Rasmussen plus earnings and interest, for Plaintiff's benefit.

18. In approximately December 2011, Plaintiff first submitted an application to the Board to begin receiving monthly distributions from his retirement annuity fund.

19. In June 2012, the Board purportedly reached a final decision denying Plaintiff's application. The Board claimed that the payments made by Rasmussen on Plaintiff's behalf had been "received in error" by the Board because they were made while Plaintiff was "not in Covered Employment." The Board further claimed that "[t]he contributions that have been received in error will be returned to Rasmussen Mechanical."

20. As of June 2012, a total of $243,415.42 had accumulated in Plaintiff's retirement annuity fund held by the Board.

21. Upon information and belief, the Board has given some, but not all, of the money in Plaintiff's retirement annuity fund to Rasmussen.

22. Upon information and belief, Rasmussen is receiving credits from the Board against future payments Rasmussen is and/or will make to the Trust on behalf of its employees.

## COUNT I: BREACH OF CONTRACT BY RASMUSSEN

23. Plaintiff re-pleads paragraphs 1 through 22 of this Complaint as if fully set forth herein.

24. Plaintiff and Rasmussen mutually intended to and did enter into a contract in approximately 1989. Under the contract, Rasmussen agreed that, in consideration of Plaintiff providing services to Rasmussen as a salaried employee, Rasmussen would provide retirement benefits to Plaintiff, in addition to all other wages, whereby Rasmussen would make regular payments to a retirement annuity fund from which Plaintiff later would receive distributions.

25. Plaintiff performed all conditions precedent to Rasmussen's performance under the contract by providing services to Rasmussen as a salaried employee.

26. In accordance with the parties' mutual intent, Rasmussen made regular payments to a retirement annuity fund held in Plaintiff's name from approximately 1990 to August 2008.

27. Rasmussen breached the contract by:
   a. Refusing to authorize distributions to Plaintiff from the retirement annuity fund;
   b. Causing the retirement annuity fund to refuse Plaintiff's application for distributions;
   c. Accepting distributions and/or benefits from Plaintiff's retirement annuity fund; and/or
   d. Refusing to give distributions and/or benefits received from the Plaintiff's retirement annuity fund to Plaintiff.

28. As a result of Rasmussen's breaches of the parties' contract, Plaintiff at a minimum has suffered damages as of June 2012 in the amount of $243,415.42.

**WHEREFORE** Plaintiff respectfully prays for judgment against Rasmussen in the amount of $243,415.42 plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

### COUNT II: VIOLATION OF WAGE PAYMENT AND COLLECTION ACT BY RASMUSSEN

29. Plaintiff re-pleads paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30. While employed by Rasmussen, Plaintiff was an "employee" for purposes of *Neb. Rev. Stat.* § 48-1229(2).

31. While Rasmussen employed Plaintiff, Rasmussen was an "employer" for purposes of *Neb. Rev. Stat.* § 48-1229(1).

32. Rasmussen separated Plaintiff from the payroll for purposes of *Neb. Rev. Stat.* §§ 48-1230(3)(a) and 48-1230.01 on August 11, 2008.

33. Plaintiff's "wages" for purposes of *Neb. Rev. Stat.* § 48-1229(4) during his employment by Rasmussen included, at a minimum, his annual salary and retirement benefits.

34. Because Plaintiff has been separated from the payroll for purposes of *Neb. Rev. Stat.* § 48-1230(3)(a), all of Plaintiff's wages are now due and owing to Plaintiff.

35. Plaintiff has sent demand in writing to the attorney for Rasmussen to remit payment of Plaintiff's wages in the form of retirement benefits totaling $243,415.42. However, Rasmussen has refused this demand and failed to pay.

36. Rasmussen has willfully failed to pay Plaintiff's wages for purposes of *Neb. Rev. Stat.* § 48-1232(2).

**WHEREFORE** Plaintiff respectfully prays for judgment against Rasmussen as follows:

  a. A money judgment in an amount equal to all unpaid wages due and owing to Plaintiff pursuant to the Nebraska Wage Payment and Collection Act;

b.     Plaintiff's costs of suit, as authorized by *Neb. Rev. Stat.* § 48-1231(1);

c.     Interest, including pre-judgment interest;

d.     Attorney's fees in an amount not less than twenty-five percent of Plaintiff's unpaid wages, as authorized by *Neb. Rev. Stat.* § 48-1231(1);

e.     An amount equal to two times the amount of Plaintiff's unpaid wages, to be remitted to the State Treasurer as provided under *Neb. Rev. Stat.* § 48-1232; and

f.     Any other relief the Court deems just.

### COUNT III: TORTIOUS CONVERSION BY RASMUSSEN

37. Plaintiff re-pleads paragraphs 1 through 36 of this Complaint as if fully set forth herein.

38. Rasmussen has wrongfully exerted dominion over Plaintiff's retirement benefits by accepting distributions and/or benefits from the Plaintiff's retirement annuity fund and/or by refusing to give distributions and/or benefits Rasmussen has received from Plaintiff's retirement annuity fund to Plaintiff.

39. Rasmussen's wrongful exertion of dominion has deprived Plaintiff of his personal property permanently or for an indefinite period of time.

40. As a result of Rasmussen's wrongful conversion, Plaintiff has been damaged in the amount of $243,415.42.

**WHEREFORE** Plaintiff respectfully prays for judgment against Rasmussen in the amount of $243,415.42 plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

### COUNT IV: EQUITABLE ESTOPPEL AGAINST RASMUSSEN

41. Plaintiff re-pleads paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. On each of Plaintiff's paycheck stubs received from approximately 1990 to August 2008, Rasmussen notified Plaintiff in writing of the amount of Rasmussen's most recent payment to Plaintiff's retirement annuity fund.

43. Rasmussen never offered Plaintiff the option to enroll in Rasmussen's 401(k) retirement plan that was offered by Rasmussen to other salaried employees.

44. Rasmussen's conduct from approximately 1990 to August 2008, in the form of regular payments to Plaintiff's retirement annuity fund, regular written notices to Plaintiff of such payments, and never offering Plaintiff the option to enroll in Rasmussen's 401(k) retirement plan, constituted a representation to Plaintiff that Rasmussen's payments to the retirement annuity fund were part of Plaintiff's compensation package, i.e., retirement benefits that belonged to Plaintiff.

45. As expected by Rasmussen, Plaintiff continued his employment with Rasmussen and forewent diverting a portion of his compensation to other retirement planning options in good faith detrimental reliance on Rasmussen's conduct described above.

46. Contrary to Rasmussen's conduct described above, Rasmussen has wrongfully accepted distributions of Plaintiff's retirement benefits, has now claimed ownership of such distributions, has caused the retirement annuity fund to refuse Plaintiff's application for distributions, and/or has refused to authorize distributions to Plaintiff from the retirement annuity fund.

47. Under the circumstances, justice requires that Rasmussen be estopped from denying Plaintiff his retirement benefits and should be required to reimburse Plaintiff for damages caused by Rasmussen's denial of Plaintiff's retirement benefits.

**WHEREFORE** Plaintiff respectfully prays for judgment against Rasmussen in the amount of $243,415.42 plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

### COUNT V: UNJUST ENRICHMENT BY RASMUSSEN

48. Plaintiff re-pleads paragraphs 1 through 48 of this Complaint as if fully set forth herein.

49. Rasmussen has received and/or is receiving distributions and/or benefits from Plaintiff's retirement annuity fund.

50. Rasmussen has received and/or is receiving distributions and/or benefits from Plaintiff's retirement annuity fund under inequitable and/or fraudulent circumstances.

51. Under the circumstances, Rasmussen has been unjustly enriched and it would be inequitable and unconscionable to permit Rasmussen to retain the distributions and/or benefits from Plaintiff's retirement annuity fund.

**WHEREFORE** Plaintiff respectfully prays for judgment against Rasmussen requiring Rasmussen to disgorge and pay to Plaintiff all distributions and/or benefits received from Plaintiff's retirement account plus costs and interest and for any other relief the Court deems just.

### COUNT VI: TORTIOUS INTERFERENCE BY BRUCE

52. Plaintiff re-pleads paragraphs 1 through 52 of this Complaint as if fully set forth herein.

53. Plaintiff had a valid expectancy that, upon application, he would receive monthly distributions of retirement benefits from his retirement annuity fund held by the Board. This expectancy was based on Plaintiff's relationship with the Board, including the periodic account statements received from the Board.

54. Bruce had knowledge of Plaintiff's expectancy and relationship with the Board.

55. Bruce intentionally and unjustifiably interfered with Plaintiff's expectancy and relationship with the Board by communicating or causing others to communicate with the Trust for the purpose of preventing Plaintiff from receiving distributions from his retirement annuity fund and/or by otherwise causing the Board to deny Plaintiff's application for distributions from his retirement annuity fund.

56. Bruce's intentional and unjustified interference prevented Plaintiff from receiving retirement benefits.

57. As a result of Bruce's intentional and unjustified interference into Plaintiff's expectancy and relationship with the Board, Plaintiff has not received his retirement benefits and, at a minimum, has suffered damages as of June 2012 in the amount of $243,415.42.

**WHEREFORE** Plaintiff respectfully prays for judgment against Bruce in the amount of $243,415.42 plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

### COUNT VII: NEGLIGENT MISREPRESENTATION BY THE BOARD

58. Plaintiff re-pleads paragraphs 1 through 58 of this Complaint as if fully set forth herein.

59. From 1990 to approximately 2010, the Board represented to Plaintiff that it was maintaining Plaintiff's retirement annuity fund, comprised of payments received from Rasmussen plus earnings and interest, for Plaintiff's benefit and that Plaintiff would receive distributions from his retirement annuity fund upon retirement.

60. The Board made such representations to Plaintiff even though it knew or should have known such representations were false.

61. The Board made such false representations to Plaintiff knowing that Plaintiff would rely on such representations.

62. In reliance on such representations from the Board, Plaintiff continued employment with Rasmussen and forewent other job opportunities and other retirement planning and/or saving.

63. Plaintiff's reliance on the Board's representations was reasonable.

64. Plaintiff's reliance on the Board's representations proximately caused Plaintiff to suffer the loss of his retirement benefits.

65. As of June 2012, Plaintiff has suffered damages of at least $243,415.42.

**WHEREFORE** Plaintiff respectfully prays for judgment against the Board in the amount of $243,415.42 plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

### COUNT VIII: UNJUST ENRICHMENT/IMPOSITION OF CONSTRUCTIVE TRUST AGAINST THE BOARD

66. Plaintiff re-pleads paragraphs 1 through 66 of this Complaint as if fully set forth herein.

67. From approximately 1990 to August 2008, the Board received regular payments from Rasmussen on behalf of Plaintiff knowing that the purpose of the payments was to provide Plaintiff with retirement benefits.

68. The Board deposited payments received from Rasmussen into a retirement annuity fund for Plaintiff and sent regular account statements to Plaintiff regarding the balance and status of his retirement annuity fund.

69. The Board continues to possess, in whole or in part, Plaintiff's retirement annuity fund consisting of the accumulated payments from Rasmussen made on behalf of Plaintiff plus earnings and interest.

70. From 1990 to the present, the Board has benefitted from its possession of the payments made by Rasmussen on Plaintiff's behalf. Such benefits include, but are not limited to, investment earnings and the accrual of interest.

71. The Board accepted payments from Rasmussen on behalf of Plaintiff even though it knew or should have known it should not have accepted such payments in light of its ultimate determination to deny Plaintiff's application for distribution of benefits from his retirement annuity fund.

72. The Board accepted payments from Rasmussen on behalf of Plaintiff even though it failed to conduct a reasonable inquiry as to whether it should be accepting such payments.

73. The Board has received payments from Rasmussen on behalf of Plaintiff and retained such payments under inequitable, tortious, and/or fraudulent circumstances.

74. Under the circumstances, it would be inequitable and unconscionable to permit the Board to retain the money in Plaintiff's retirement annuity fund.

75. Under the circumstances, the Board has an equitable duty to convey the money in Plaintiff's retirement annuity fund to Plaintiff because the Board's retention of such property would constitute unjust enrichment.

**WHEREFORE** Plaintiff respectfully prays that judgment be entered against the Board imposing a constructive trust upon the money in Plaintiff's retirement annuity fund and requiring the Board to convey such money to Plaintiff plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

### COUNT IX: BREACH OF FIDUCIARY DUTY BY THE BOARD

76. Plaintiff re-pleads paragraphs 1 through 75 of this Complaint as if fully set forth herein.

11

77. From approximately 1990 to August 2008, the Board received payments from Rasmussen identified by both Rasmussen and the Board as belonging to Plaintiff.

78. In accepting such payments, the Board owed a fiduciary duty to Plaintiff to hold them for Plaintiff's benefit.

79. The Board breached its fiduciary duty to Plaintiff by:

   a. Making distributions to Rasmussen of payments and/or benefits belonging to Plaintiff;

   b. Failing to obtain Plaintiff's permission before making distributions to Rasmussen of payments and/or benefits belonging to Plaintiff.

80. As a result of the Board's breaches of fiduciary duty to Plaintiff, Plaintiff has suffered damages as of June 2012 of at least $243,415.42.

**WHEREFORE** Plaintiff respectfully prays for judgment against the Board in the amount of $243,415.42 plus costs and interest, including pre-judgment interest, and for any other relief the Court deems just.

ROBERT HILL, Plaintiff

BY:
FOR: LOCHER PAVELKA DOSTAL
BRADDY & HAMMES, LLC
200 The Omaha Club
2002 Douglas Street
Omaha, NE 68102
Phone: (402) 898-7000
Thomas M. Locher, #15797
Joseph J. Kehm, #22433